| |
|---|
| **Palacios v Ford Found.** |
| 2025 NY Slip Op 34393(U) |
| November 19, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 154644/2020 |
| Judge: Sabrina Kraus |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. SABRINA KRAUS**          PART          **57M**

*Justice*

-------------------------------------------------------------------------------X

MILTON PALACIOS,

                Plaintiff,

       - v -

THE FORD FOUNDATION, HENEGAN CONSTRUCTION
CO., INC.,

                Defendants.

-------------------------------------------------------------------------------X

HENEGAN CONSTRUCTION CO., INC.

                Plaintiff,

       -against-

STIRANO ELECTRIC CO., INC.

                Defendant.

-------------------------------------------------------------------------------X

THE FORD FOUNDATION

                Plaintiff,

       -against-

STIRANO ELECTRIC CO., INC.,

                Defendant.

-------------------------------------------------------------------------------X

THE FORD FOUNDATION

                Plaintiff,

       -against-

PREFERRED SPRINKLER AND MECHANICAL CORP.,

                Defendant.

-------------------------------------------------------------------------------X

HENEGAN CONSTRUCTION CO., INC.

---

**INDEX NO.**     154644/2020

**MOTION DATE**    04/28/2025,
06/18/2025,
11/10/2025

**MOTION SEQ. NO.**    006 009

## DECISION + ORDER ON MOTION

Third-Party
Index No. 595844/2020

Second Third-Party
Index No. 595999/2023

Third Third-Party
Index No. 595151/2024

Fourth Third-Party

---

**154644/2020 PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No. 006 008 009**

**Page 1 of 19**

Index No. 595152/2024

Plaintiff,

-against-

PREFERRED SPRINKLER AND MECHANICAL CORP

Defendant.
-----------------------------------------------------------------------------------X

HENEGAN CONSTRUCTION CO., INC.

Fifth Third-Party
Index No. 595153/2024

Plaintiff,

-against-

HARBOUR MECHANICAL CORPORATION

Defendant.
-----------------------------------------------------------------------------------X

HENEGAN CONSTRUCTION CO., INC.

Sixth Third-Party
Index No. 595154/2024

Plaintiff,

-against-

PREFERRED MECHANICAL INC

Defendant.
-----------------------------------------------------------------------------------X

HENEGAN CONSTRUCTION CO., INC.

Seventh Third-Party
Index No. 595827/2024

Plaintiff,

-against-

HARBOUR MECHANICAL CORPORATION

Defendant.
-----------------------------------------------------------------------------------X

HENEGAN CONSTRUCTION CO., INC.

Eighth Third-Party
Index No. 595193/2025

Plaintiff,

-against-

THE PACE COMPANIES NEW YORK, INC.,

Defendant.
-----------------------------------------------------------------------------------X

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 2 of 19**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 188, 215, 216, 217, 220, 223, 227, 231, 234

were read on this motion to/for          SUMMARY JUDGMENT (AFTER JOINDER) .

The following e-filed documents, listed by NYSCEF document number (Motion 009) 190, 191, 218, 219, 221, 224, 228, 232, 235, 238, 239, 245

were read on this motion to/for          JUDGMENT - SUMMARY .

The following e-filed documents, listed by NYSCEF document number (Motion 009) 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 222, 225, 229, 233, 236

were read on this motion to/for          JUDGMENT - SUMMARY .

## BACKGROUND

Plaintiff commenced this action for personal injuries arising out of a July 9, 2018, workplace accident.

Defendants The Ford Foundation ("Ford") and Henegan Construction Company, Inc. ("Henegan") commenced a third-party action against Striano Electric Company, Inc. ("Striano") for contractual and common-law indemnification, contribution, and breach of contract arising out of the plaintiff's action.

## PENDING MOTIONS

On June 25, 2025, Plaintiff moved for partial summary judgment for liability on his Labor Law § 241(6) claim (mot. seq. 006).

On July 15, 2025, Ford and Henegan moved for an order granting summary judgment on their claims of contractual and common-law indemnification against Striano (mot. seq. 009).

On November 10, 2025, Striano cross-moved for an order (mot. seq. 009) dismissing all of Ford and Henegan's claims in their third-party complaint and granting Striano summary judgment on its' counterclaims for contractual and common-law indemnification.

The motions are consolidated herein and determined as set forth below.

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 3 of 19**

3 of 19

[* 3]

## FACTS

On October 7, 2015, Ford entered into an agreement with Henegan for Henegan to serve as the construction manager for a renovation ("Renovation") of Ford's headquarters at 320 East 43rd Street, New York, NY 10017 ("the Headquarters"). Under the agreement, Henegan was given the authority to hire subcontractors to aid in the completion of the Renovation.

On April 10, 2017, Henegan awarded a contract through a purchase order ("Subcontractor Agreement") to Striano to perform electrical services for the Renovation. The Subcontractor Agreement provided that Striano would indemnify Ford and Henegan against claims arising out of Striano's work, and it also provided that Striano would purchase comprehensive general liability insurance covering Striano, Henegan, and Ford for liability arising out of bodily injury sustained in connection with the Renovation. The Subcontractor Agreement did not provide that Striano would be responsible for any sort of work related to plumbing.

On May 1, 2018, Henegan and Striano executed another indemnification agreement ("Subsequent Indemnification Agreement") with nearly identical relevant provisions.

Plaintiff was an electrician employed by Striano who worked on the Renovation at the Headquarters. Pursuant to the Subcontractor Agreement, workers from Striano, such as Plaintiff, were tasked with the installation of light fixtures. On July 9, 2018, Plaintiff was working on the 11th floor of the Headquarters installing light fixtures in the ceiling. Before installing a fixture, Plaintiff would position an A-frame ladder underneath the appropriate spot and carry the fixture up the ladder.

Around 2:00 p.m. that day, Plaintiff set up his ladder on the 11th floor where he attempted to install a lamp in the ceiling. Throughout the area, pipes were scattered around his

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 4 of 19**

ladder on the floor. Plaintiff then climbed the ladder while holding a lamp that was about two feet in each dimension. Plaintiff was unable to affix the lamp to the ceiling, and he descended the ladder while still carrying the lamp. When Plaintiff dismounted the ladder and stepped onto the floor, he took a few steps backward, tripping on one of the pipes ("Subject Pipe").

Plaintiff testified that the Subject Pipe was a rigid, steamfitter's pipe. He also testified that new pipes on the floor were around 10 feet long, but the Subject Pipe was around 2 to 3 feet long, indicating that a subcontractor on the site had cut the Subject Pipe and discarded the remains.

## DISCUSSION

### *Standard of Review*

Summary judgment is a drastic remedy reserved for cases when it is apparent that "no material and triable issue of fact is presented" (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]). To prevail on a motion for summary judgment, the movant must establish *prima facie* entitlement to judgment as a matter of law, tendering evidence in admissible form demonstrating the absence of any triable issues of fact (CPLR § 3212(b); *Matter of New York City Asbestos Litig.*, 33 NY3d 20, 25–26 [2019]; *Zuckerman v New York*, 49 NY2d 557, 562 [1980]). When the movant meets this initial burden, summary judgment will be denied only when the nonmovant provides evidence in admissible form demonstrating the existence of triable issues of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). However, "[m]ere conclusions, expressions of hope, or unsubstantiated allegations or assertions are insufficient" to overcome a motion for summary judgment (*Justinian Capital SPC v WestLB AG*, 28 NY3d 160, 168 [2016] [alteration in original], quoting *Gilbert Frank Corp. v Fed. Ins. Co.*, 70 NY2d 966, 967 [1988]). Courts view the evidence in a light most favorable to the nonmovant, according the

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 5 of 19**

5 of 19

[* 5]

nonmovant "the benefit of every reasonable inference" (*Negri v Stop & Shop, Inc.*, 65 NY2d 625, 626 [1985]).

### *Plaintiff's Labor Law § 241(6) Claim*

*A violation of Industrial Code § 23-1.7(e)(2) proximately caused Plaintiff's injuries.*

Labor Law § 241(6) provides:

> All areas in which construction . . . work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall comply therewith. (Labor Law § 241(6)).

Section 241(6) imposes a nondelegable duty on owners and general contractors "to provide reasonable and adequate protection and safety for workers" and "to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Misicki v Caradonna*, 12 NY3d 511, 515 [2009], citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501–02 [1993]). By enacting section 241(6), the Legislature intended "to place the 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor," not on the workers themselves (*Rizzuto v LA Wenger Contr. Co.*, 91 NY2d 343, 348 [1998] [emphasis removed], quoting 1969 NY Legis Ann at 407–08).

To prevail on a section 241(6) claim, the plaintiff must first prove that there was a violation of a regulation in the Industrial Code that places a "specific, positive command" on the owner or general contractor to ensure safe working conditions (*id.* at 349, quoting *Ross*, 81 NY2d at 504). The Commissioner's safety regulations are set out in Title 12, part 23 of the New York Codes, Rules and Regulations (12 NYCRR § 23-1.1 [hereinafter "Industrial Code"]; *Garcia v 225 E. 57th St. Owners, Inc.*, 96 AD3d 88, 90 [1st Dept 2012]). The plaintiff must then

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 6 of 19**

6 of 19

prove that the violation of the Industrial Code proximately caused his injury (*Romano v New York City Tr. Auth.*, 213 AD3d 506, 507–08 [1st Dept 2023]; *see also Ares v State*, 80 NY2d 959, 959 [1992]).

*The presence of the Subject Pipe violated Industrial Code § 23-1.7(e)(2).*

Industrial Code § 23-1.7(e), entitled "Tripping and other hazards," provides,

(1) *Passageways.* All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. Sharp projections which could cut or puncture any person shall be removed or covered.

(2) *Working areas.* The parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed.

(Industrial Code § 23-1.7(e)(1)–(2)).

A violation of subsection (2) is sufficiently specific as a basis of liability under Labor Law § 241(6) (*see Smith v Extell W. 45th LLC*, 230 AD3d 1044, 1045 [1st Dept 2024], citing *Boss v Integral Constr. Corp.*, 249 AD2d 214, 215 [1st Dept 1998]).

Plaintiff argues that the presence of the Subject Pipe constituted a violation of Industrial Code § 23-1.7(e)(2) and that the violation proximately caused his injuries (Affirmation in Support (mot. seq. 006) at 10–12). The Court agrees.

The Subject Pipe was "debris" under section 23-1.7(e)(2). The language of the regulation proscribes "accumulations of dirt and debris" in "[w]orking areas" (Industrial Code § 23-1.7(e)(2)). The fact that the Subject Pipe had been cut from its original length supports this conclusion. Assuming *arguendo* the Subject Pipe did not qualify as "debris," it would also fall under "materials" covered in section 23-1.7(e)(2). The Subject Pipe was a constituent part of the Renovation of the Headquarters, and it was also an apparatus necessary to complete the Renovation, as pipes are necessary to equip a building with plumbing.

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**                                          **Page 7 of 19**
**Motion No.  006 008 009**

Furthermore, the location in which Plaintiff tripped was among the construction site's "Working areas" (*see* Industrial Code § 23-1.7(e)(2)). It is undisputed that Plaintiff tripped immediately after he dismounted a ladder during the performance of his electrical work. Accordingly, the Court rules that Plaintiff was in a working area and that the presence of the Subject Pipe constituted a violation of Industrial Code § 23-1.7(e)(2).

The Court further finds based on the undisputed facts alleged above that the violation was a proximate cause of Plaintiff's fall.

> *The presence of the Subject Pipe was not integral to Plaintiff's work.*

In defense, Ford and Henegan argue that the presence of the Subject Pipe was integral to Plaintiff's work. The Court disagrees.

The integral-to-the-work defense bars a section 241(6) claim when the elimination of a dangerous condition "would be 'impractical and contrary to the very work at hand' and inconsistent with accomplishing a task that was 'an integral part of the job'" (*Sinai v Luna Park Hous. Corp.*, 209 AD3d 600, 601 [1st Dept 2022], quoting *Salazar v Novalex Contr. Corp.*, 18 NY3d 134, 139–40 [2011]). The defense applies "only when the dangerous condition *is inherent to the task at hand*, and not . . . when a defendant or third party's negligence created a danger that was avoidable without obstructing the work or imperiling the worker" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 320 [2024] [emphasis added]; *see also Bowden v Summit Glory Prop. LLC*, 238 AD3d 629, 630 [1st Dept 2025] ["Defendants' argument that the Masonite was integral to plaintiff's work, and thus a defense to his Labor Law § 241(6) claim, is unavailing, as there was no evidence to show the hazardous Masonite condition was inherent to plaintiff's task at hand"]).

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 8 of 19**

8 of 19

Plaintiff was an electrician tasked with the installation of light fixtures on the 11th floor of the Headquarters. Nothing in the record suggests that Plaintiff was engaged in steamfitters' pipework at the time of his injury. Rather, Ford and Henegan argue that the presence of the Subject Pipe was "an integral part of the surrounding work" and an "integral part of the overhead sprinkler and/or plumbing work." However, this misstates the integral-to-the-work defense as set down by the Court of Appeals in *Bazdaric*: The risk must be "inherent to the task at hand," not one caused by a third party's negligence (41 NY3d at 320). Ford and Henegan acknowledge that there were "piping subcontractors" at the site at the time of Plaintiff's injury. They raise no evidence that Plaintiff or Striano was engaged in steamfitters' pipework on the 11th floor.

Accordingly, the Court finds the integral-to-the-work defense inapplicable to this case.

*Plaintiff's own allegedly negligent conduct does not bar Ford and Henegan's liability for a Labor Law § 241(6) claim.*

Ford and Henegan also argue that Plaintiff's own negligence precludes summary judgment for liability on his Labor Law § 241(6) claim. The Court disagrees.

An owner or general contractor may "raise any valid defense to the imposition of vicarious liability under section 241(6), including contributory and comparative negligence" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 350 [1998]). However, a plaintiff need not demonstrate his own "freedom from comparative fault" to prevail on summary judgment for liability of a section 241(6) claim (*Bucci v City of New York*, 223 AD3d 453, 455 [1st Dept 2024], citing *Rodriguez v City of New York*, 31 NY3d 312, 323 [2018]). A plaintiff's own negligence in contributing to the cause of his injury is an issue of damages for the finder of fact (*see Fresco v 157 E. 72nd St. Condo.*, 2 AD3d 326, 328 [1st Dept 2003] ["The general contractor is liable to plaintiff for the full amount of plaintiff's damages, less plaintiff's comparative fault, by reason of the violation of Labor Law § 241(6)."]).

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 9 of 19**

9 of 19

[* 9]

Accordingly, any argument that Plaintiff was comparatively negligent pertains to damages, not liability.

### *Henegan & Ford are entitled to Summary Judgment on Contractual Indemnification*

Indemnity involves "the right of one party to shift the entire loss to another" (23 NY Jur 2d, Contribution, Indemnity, and Subrogation § 73). A party's right of indemnity arises out of two scenarios: (1) contractual, or express, indemnification and (2) common–law, or implied, indemnification. (*McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 374–75 [2011]). Ford and Henegan argue they are entitled to indemnification from Striano pursuant to the Subcontractor Agreement, while Striano counters that neither the Subcontractor Agreement nor the Subsequent Indemnification Agreement grants them a right of indemnity.

#### *The accident arose out of Striano's work under the Subcontractor Agreement.*

When interpreting a contract, the "fundamental, neutral precept . . . is that agreements are construed in accord with the parties' intent" (*Donohue v Cuomo*, 38 NY3d 1, 12 [2022], quoting *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). The best evidence of the parties' intent "is what they say in their writing" (*id.*). A contract that is "clear on its face 'must be enforced according to the plain meaning of its terms'" (*Bank of NY Mellon v WMC Mtge., LLC*, 136 AD3d 1, 6 [1st Dept 2015], quoting *Banco Espírito Santo, S.A. v Concessionária Do Rodoanel Oeste S.A.*, 100 AD3d 100, 106 [1st Dept 2012]). When interpreting indemnification agreements, courts strictly construe such an obligation "to avoid reading into it a duty which the parties did not intend to be assumed" (*Hooper Assoc. v AGS Computers, Inc.*, 74 NY2d 487, 491 [1989]).

Section 6.1 of Exhibit A within the Subcontractor Agreement reads:

> To the fullest extent permitted by law, Subcontractor [Striano] shall indemnify, defend and hold harmless Owner [Ford], Construction Manager [Henegan] . . . from and against all claims, damages, losses and expenses, including, but not limited to, damages, losses and expenses, including, but not limited to, attorneys' fees, *arising*

**154644/2020 PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No. 006 008 009**

**Page 10 of 19**

10 of 19

[* 10]

*out of, in connection with or resulting from Subcontractor's Work*, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death . . . regardless of whether or not it is caused in part by a party indemnified hereunder (Subcontractor Agreement at 13 [emphasis added]).

The May 1, 2018, Subsequent Indemnification Agreement provides:

To the fullest extent permitted by law, Subcontractor [Striano] shall indemnify and hold harmless Contractor [Henegan] and its directors, officers, employees, agents and representatives from and against all claims, damages, losses and expenses, including, but not limited to, attorneys' fees, *arising out of or resulting from the performance of Subcontractor's Work*, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death[.] (NYSCEF Doc No. 9 ("Subsequent Indemnification Agreement") at 1 [emphasis added]).

Regarding the part of the Subcontractor Agreement detailing Striano's work, Section 1.1 of the Subcontractor Agreement provides:

The Subcontractor [Striano] shall . . . Furnish all labor and material to complete ELECTRICAL scope of work [sic] in accordance with the bid package including but not limited to scope of work [sic] listed below. (*Id.* at 1).

The Subcontractor Agreement then lists a variety of electrical tasks assigned to Striano—from the installation of power lines for the security system to the installation of power circuiting for the Headquarters' security gate to the furnishing of circuit breakers and welding connectors (*id.* at 3–4). At only one place in this section of the Subcontractor Agreement does it indicate that Striano might be involved in pipework, requiring that Striano:

[f]urnish all labor to implement and support the commissioning of the electrical system, including any mechanical, plumbing, fire alarm, and fire protection equipment being commissioned with electrical connections (*id.* at 10; *see also id.* at 1–10).

Throughout the rest of section 1.1, however, the Subcontractor Agreement explicitly provides that Striano will "[c]oordinate" its work with "the plumbing contractor" (*see id.* at 3, 4).

Ford and Henegan argue that Striano must indemnify them from Plaintiff's claim because Plaintiff's tripping on the Subject Pipe was "arising out of" the "Subcontractor's Work." The Court agrees.

**154644/2020 PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No. 006 008 009**

**Page 11 of 19**

Indemnification contracts often provide that a proposed indemnitor shall indemnify another party for claims "arising out of" the proposed indemnitor's work. Courts broadly interpret this phrase to apply to injuries that occur when a plaintiff was present on a worksite for the purposes of completing their work—even when the accident was caused by the negligence of a third party or by dangers not inherent to the plaintiff's specific task (*see e.g. O'Connor v Serge Elevator Co.*, 58 NY2d 655 [1982]; *Cresser v 345 Park Ave., L.P.*, 193 AD3d 526 [1st Dept 2021]; *Ramirez v Almah, LLC*, 169 AD3d 508 [1st Dept 2019]).

In *O'Connor v Serge Elevator Co.*, the Court of Appeals held that an indemnity clause applying to personal injuries "arising out of the work which is the subject of this contract" applied to the plaintiff's being struck by an elevator while he was leaving the worksite for lunch (*O'Connor*, 58 NY2d at 657). Although the plaintiff was injured when he was not engaged in his specific task, nor was elevator-related work part of his job, the Court of Appeals held that the contract:

> could not be performed . . . unless [the indemnitor's] employees could reach and leave their workplaces on the job site. The instant injuries, occurring during such a movement, must be deemed as a matter of law to have *arisen out of* the work. (*Id.* [emphasis added]).

Similarly, in *Cresser v 345 Park Avenue, L.P.*, the First Department held that a plaintiff's injury triggered his employer's indemnification obligation because the accident "arose from [the indemnitor's] acts in connection with the performance of the work" (*Cresser*, 193 AD3d at 527). There, the plaintiff tripped on a raised portion of the floor that was installed by *another* subcontractor, but the First Department nevertheless held that the plaintiff's own employer was still required to indemnify the general contractor under their agreement (*id.*).

Finally, in *Ramirez v Almah, LLC*, the plaintiff alleged that he was injured when he was struck by a negligently installed door at his worksite (169 AD3d 508, 509 [1st Dept 2019]). Even

**154644/2020  PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 12 of 19**

though his injuries were caused by the negligent conduct of another, the First Department held that they "arose from his performance of his work as an employee of [the proposed indemnitor]," requiring that his employer indemnify the beneficiary of the agreement (*id.*).

Taken together, these cases illustrate the principle that an indemnity provision for personal injuries "arising out of" the work of an indemnitor applies broadly to injuries sustained by the indemnitor's employees while present on the worksite for the performance of their work. Indemnification is triggered even when the employee is injured by dangers caused by a negligent third party or risks not inherent to the employee's task. As such, Striano's argument that there is no evidence that Striano was responsible for plumbing or pipework at the Headquarters is immaterial.

It is undisputed that Plaintiff tripped on the Subject Pipe while performing electrical work at the Headquarters pursuant to the terms of the Subcontractor Agreement. This is sufficient to trigger the indemnity obligation in both the Subcontractor Agreement and the Subsequent Indemnification Agreement.

An agreement by a subcontractor to indemnify an owner or general contractor is void against public policy when it purports to indemnify the owner or general contractor for claims arising out of their own negligence (*e.g. Cackett v Gladden Props., LLC*, 183 AD3d 419, 422 [1st Dept 2020], citing General Obligations Law § 5-322.1[1]). These agreements are valid, however, when they contain "savings" language that limits a party's indemnification "[t]o the fullest extent permitted by law" (*Williams v City of New York*, 74 AD3d 479, 480 [1st Dept 2010]; *see also Miano v Battery Place Green LLC*, 117 AD3d 489, 490 [1st Dept 2014]). Because the provision in the Subcontractor Agreement begins with "savings" language, it is not void against public policy.

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**                **Page 13 of 19**
  **Motion No.  006 008 009**

13 of 19

Moreover, an owner or general contractor's partial negligence does not defeat their motion for summary judgment as to contractual indemnification (*Ramirez v Almah LLC*, 169 AD3d 508, 509 [1st Dept 2019] ["[D]efendant may be entitled to indemnification even if it is found partially negligent"]). Only "where an issue of fact exists as to whether the owner or general contractor's negligence was the sole proximate cause of the underlying claim" will a court deny summary judgment for contractual indemnification (*Cackett*, 183 AD3d at 422, citing *Callan v Structure Tone, Inc.*, 52 AD3d 334, 335–36 [1st Dept 2008]; *see also Jamindar v Uniondale Union Free Sch. Dist.*, 90 AD3d 612, 616 [2d Dept 2011]).

As there are unresolved allegations as to the negligence of Henegan and/or Ford, but no allegation that they were the sole proximate cause of the accident, they are awarded conditional contractual indemnification as against Striano. *Ramos v. Ford Found.*, 240 NYS 3d 39, 40 (1st Dept. 2025).

Because Striano must contractually indemnify Ford and Henegan for Plaintiff's claim, the Court need not reach the issues of common-law indemnification and contribution claims as they are academic (*see Weidtman v Tremont Renaissance Hous. Dev. Fund Co.*, 224 AD3d 488, 491–92 [1st Dept 2024]; *see also Corleto v Henry Restoration Ltd.*, 206 AD3d 525, 526 [1st Dept 2022]).

Finally based on the foregoing Striano's motion for summary judgment on contractual and common-law indemnification against Ford and Henegan is denied.

### The Parties' Breach-of-Contract Claims

*Ford and Henegan's breach-of-contract claim against Striano's for failure to indemnify is duplicative of their contractual indemnification claim.*

Ford and Henegan argue that Striano is liable for breach of contract for the failure to indemnify them against Plaintiff's cause of action (Memorandum of Law (mot. seq. 009) at 16).

**154644/2020  PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 14 of 19**

However, this claim wholly arises out of the same facts as their contractual indemnification claim (*see* Exhibit A5 at 6–8; *see also* Exhibit B (mot. seq. 006) at 34–36 [pagination from PDF]). In light of Ford and Henegan's entitlement to contractual indemnification from Striano, the Court denies summary judgment for their breach-of-contract claim against Striano for the failure to indemnify (*see Demurjian v Demurjian*, 190 AD3d 410, 411 [1st Dept 2021] [*affirming summary dismissal of a contractual indemnification claim because it arose out of the same facts as the plaintiff's breach-of-contract claim*]).

*Ford and Henegan's Notice of Motion was deficient regarding their breach-of-contract claim for Striano's alleged failure to adhere to the Subcontractor Agreement's safety requirements.*

CPLR § 2214(a) provides, "A notice of motion shall specify . . . the relief demanded and the grounds therefor. Relief in the alternative or of several different types may be demanded." A notice of motion is deficient when it "utterly fail[s] to specify the relief sought" (*see Onofre v 243 Riverside Dr. Corp.*, 232 AD3d 443, 444–45 [1st Dept 2024], citing *Abizadeh v Abizadeh*, 159 AD3d 856, 857 [2d Dept 2018]). When a movant's notice of motion is deficient, a court may deny a party's motion for summary judgment, as courts are "not required to comb through a litigant's papers to find information that is required to be set forth in the notice of motion" (*Abizadeh*, 159 AD3d at 857; *see also Onofre*, 232 AD3d at 444, citing *Caesar v Metropolitan Transp. Auth.*, 229 AD3d 601, 601–02 [2d Dept 2024]).

Nevertheless, a court may grant relief not specifically requested in the notice of motion through the notice's general prayer for relief when (1) "the relief granted is not too dramatically unlike the relief sought," (2) "the relief is warranted by the facts plainly appearing on the papers on both sides," (3) "the proof offered supports it" and (4) "there is no prejudice to any party" (*Caesar*, 229 AD3d at 601–02; *see also Onofre*, 232 AD3d at 444).

Ford and Henegan's Notice of Motion only seeks summary judgment on their claims for:

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.   006 008 009**

**Page 15 of 19**

contractual and common law indemnity . . . against third party defendant STRIANO ELECTRIC CO., INC., or at the very least a conditional order for contractual and common law indemnity with such other and further relief as this Court may deem just and proper (NYSCEF Doc No. 192 ("Notice of Motion") at 3).

The Notice of Motion does not seek summary judgment on a breach-of-contract claim for Striano's alleged failure to adhere to safety protocols (*see id.*). Ford and Henegan's Memorandum of Law, however, seeks summary judgment against Striano for breaching "several contractual obligations concerning safety" (Memorandum of Law (mot. seq. 009) at 16). Any relief as to this claim would have to flow from the Notice of Motion's general prayer for relief.

But Ford and Henegan's breach-of-contract claim for Striano's alleged failure to adhere to safety protocols is "dramatically unlike" their claim for contractual indemnification, which they actually sought in their Notice of Motion (*Caesar*, 229 AD3d at 444). While adjudication of a contractual indemnification claim involves an interpretation of Plaintiff's accident in relation to the meaning of the Subcontractor Agreement, the breach-of-contract claim involves the conduct of Striano, as a firm, in adhering to the Subcontractor Agreement's safety and inspection protocols. Under *Caesar*, the Court may deny Ford and Henegan's motion for summary judgment on this basis alone (*see id.*).

In any event, it is also unclear that the "relief is warranted by the facts plainly appearing on the papers on both sides" (*see id.*). As stated above, Ford and Henegan acknowledge that a separate piping contractor was likely the entity who left the Subject Pipe on the ground. Depending on the time that the pipes were left around Plaintiff's ladder—a triable issue of fact—Striano may have had little opportunity to discover and correct the condition.

Accordingly, the Court denies Ford and Henegan's motion for summary judgment for breach of contract against Striano for failure to follow the safety rules under the Subcontractor Agreement.

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 16 of 19**

16 of 19

*The Court grants Striano's motion for summary judgment to dismiss Ford and Henegan's breach-of-contract claim for failure to procure insurance.*

Striano argues that Ford and Henegan's claim for breach of contract should be dismissed as it relates to the failure to procure liability insurance (Affirmation in Support of Cross-Motion (mot. seq. 009) at 26). The Court agrees.

Section 7 of the Subcontractor Agreement provides:

**Subcontractor** [Striano] . . . shall purchase and maintain the following types of insurance with the coverages and limits specified[:]

. . .

**7.1.2** Comprehensive General Liability insurance, with limits, unless noted otherwise below, of at least Two Million Dollars ($2,000,000) each occurrence in respect of bodily injury and property damage, subject to Four Million Dollars ($4,000,000) in the aggregate, per job, including coverage for all of the following[:]

. . .

.3    Blanket Contractual Liability, including indemnification of Henegan Construction Co., Inc. and their directors, officers, employees, agents and representatives.

. . .

.5    "Occurrence" Bodily Injury and Property Damage Form.

(Subcontractor Agreement at 13 [pagination from PDF] [bolding and underlining in original]).

In support of its motion for summary judgment, Striano offers proof of an insurance policy that insures Striano for up to $2,000,000 for each occurrence resulting in bodily injury and up to $4,000,000 for the general aggregate limit (NYSCEF Doc No. 97 at 3 [pagination from PDF]). The insurance policy also covers Henegan as an indemnitee provided that additional conditions are met (*id.* at 13). In opposition, Ford and Henegan raise no evidence indicating triable issues of fact regarding this claim in Striano's motion for summary judgment (*see* Memorandum of Law in Support (mot. seq. 009) at 16). Even though Striano's Insurance Policy

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 17 of 19**

17 of 19

covers them as indemnitees, they merely allege that Striano failed "to . . . acknowledge [Ford and Henegan] as additional insureds up to this point" (*id.*).

Because "unsubstantiated allegations or assertions are insufficient" to overcome a motion for summary judgment (*Justinian Capital SPC v WestLB AG*, 28 NY3d 160, 168 [2016]), the Court grants Striano's motion for summary dismissal of Ford and Henegan's breach-of-contract claim for failure to procure liability insurance.

## CONCLUSION

Accordingly, it is hereby:

ORDERED that Plaintiff's motion for partial summary judgment as to liability pursuant to Labor Law § 241(6) is granted; and it is further

ORDERED that the motion for summary judgment of The Ford Foundation and Henegan Construction Company, Inc. (mot. seq. 009) is granted against Striano Electric Company, Inc. to the extent of awarding movants conditional contractual indemnification; and it is further

ORDERED that the cross-motion for summary judgment of Striano Electric Company, Inc. (mot. seq. 009) is granted to the extent of dismissing The Ford Foundation and Henegan Construction Company, Inc.'s claims for failure to procure liability insurance, and for breach of contract as duplicative of the contractual indemnification claims; and it is further

ORDERED that any relief not expressly addressed has nonetheless been considered and is hereby denied; and it is further

ORDERED that, within twenty (20) days from entry of this order, defendants shall serve a copy of this order with notice of entry on the Clerk of the General Clerk's Office (60 Centre Street, Room 119, New York, NY 10007); and it is further

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 18 of 19**

ORDERED that such service upon the Clerk shall be made in accordance with the

procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for*

*Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address

www.nycourts.gov/supctmanh).

This constitutes the decision and order of this Court.

20251119124085SBKRAUS857F91A1362745F7B3474F90DE740BC4

| | | |
|---|---|---|
| **11/19/2025** | | |
| **DATE** | | **SABRINA KRAUS, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | X NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED ☐ DENIED | X GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**154644/2020   PALACIOS, MILTON vs. FORD FOUNDATION**
**Motion No.  006 008 009**

**Page 19 of 19**

[* 19]